Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**JACK QUIRK**
Delaware County Public Defender Agency
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JONATHAN R. SICHTERMANN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEREAMY M. BARNES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A05-1204-CR-209 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne L. Vorhees, Judge
Cause No. 18C01-1007-FA-7

**February 5, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Jereamy Barnes appeals his two convictions for Class A felony child molesting, arguing that Appellee-Plaintiff the State of Indiana presented insufficient evidence to support the jury's verdict. At trial, the twelve-year-old victim, K.R., testified that Barnes digitally penetrated her vagina on July 4, 2010, and that she and Barnes had sexual intercourse two days later. The State also presented evidence of text messages sent and received by K.R., including: "I just lost my virginity," sent to K.R.'s best friend immediately after the alleged digital penetration, and "Promise me that we r gonna have sex tonight," received from Barnes shortly before the alleged sexual intercourse. Further, a Sexual Abuse Nurse Examiner testified that a physical examination of K.R. revealed an abrasion on the right side of K.R.'s vaginal opening that could have come from a penis or a finger. Concluding that a reasonable jury could find Barnes guilty of two counts of Class A felony child molesting on this evidence, we affirm.

## FACTS AND PROCEDURAL HISTORY

In the summer of 2010, twelve-year-old K.R. lived with her mother and four siblings in a duplex apartment in Muncie. Twenty-five-year-old Barnes lived with his wife and three children in the adjoining apartment. On July 8, 2010, K.R.'s mother learned from the mother of K.R.'s best friend that K.R. had a sexual relationship with Barnes. When confronted by her mother, K.R. initially denied the allegation but ultimately admitted that she and Barnes had engaged in sexual intercourse. K.R.'s mother immediately took K.R. to the hospital, where Sexual Abuse Nurse Examiner Jennifer Hopper performed a physical examination on K.R. The exam revealed an

2

abrasion on the right side of K.R.'s vaginal opening.

On July 23, 2010, the State charged Barnes with four counts of child molesting: Count 1 alleged that Barnes performed sexual intercourse with K.R. on July 4, 2010; Count 2, that Barnes performed deviate sexual conduct with K.R. on July 4, 2010; Count 3, that Barnes performed sexual intercourse with K.R. on July 6, 2010; and Count 4, that Barnes performed fondling or touching with K.R. on July 4, 2010.[1] The State later dismissed Count 4, and a trial was held on the remaining three, all Class A felonies. At trial, the State presented, among other things, K.R.'s testimony, a transcript of text messages sent and received by K.R., and the testimony of Nurse Hopper.

K.R. testified that in the early morning of July 4, 2010, she received a text message from Barnes, inviting her to his apartment. K.R. sneaked next door, where Barnes asked K.R. if she was "ready to lose [her] virginity." Tr. p. 56. Barnes removed his clothes and persuaded K.R. to take off her pants and underwear. Barnes inserted his finger in K.R.'s vagina and proceeded to move it in and out for approximately five minutes. Afterward, K.R. returned home and texted her best friend, "I just lost my virginity … I think." Ex. p. 17. "No … I DID lose my virginity." Ex. p. 17.

Two days later, Barnes texted K.R., "Then u gon cum nd give me sum," Ex. p. 224, and "Promise me that we r gonna have sex tonight." Ex. p. 225. Shortly thereafter, K.R. again sneaked to Barnes's apartment. K.R. and Barnes began having sexual

---

[1] These are the charges as stated in the State's charging informations and the trial court's preliminary jury instructions. In their respective briefs, Appellant and Appellee erroneously list the charges as two counts of Class A felony child molesting, one count of Class B felony criminal deviate conduct, and one count of Class D felony child solicitation. This error is also found in the State's probable cause affidavit, to which the parties cite.

intercourse, but K.R. stopped and asked Barnes if he had a condom. Barnes replied that he was not going to use a condom because he would have to wake up his wife to get one. He further told K.R. that a condom would not be necessary if he did not "go in all the way." Tr. p. 71-72. K.R. and Barnes resumed having sexual intercourse and continued for approximately twenty minutes. Afterward, Barnes asked K.R. if she wanted to see what "nut" was, Tr. p. 72, before showing her some "clear stuff" in his hand. Tr. p. 73.

The next day, K.R. texted Barnes and asked, "Iff yuu do it with your clothes on, are yuu still a virgin?" Ex. p. 262. Barnes responded, "Um yea why u ask me that?" Ex. p. 264. K.R. replied, "[B]ecuz yuu said that yuu didn't think yuu popped it!" Ex. p. 268. At trial, K.R. elaborated that, after having sexual intercourse with Barnes, he told her that he did not think he had "popped [her] cherry." Tr. p. 76.

Nurse Hopper testified that she found an abrasion on the right side of K.R.'s vaginal opening that could have come from a penis or a finger. She also admitted that the abrasion could have been caused by tight-fitting clothing or a tampon. Nurse Hopper did not find any damage to K.R.'s hymen, but she testified that this fact was not determinative of whether sexual penetration had occurred.

The jury acquitted Barnes on Count 1 but found him guilty on Counts 2 and 3. The trial court sentenced Barnes to twenty-five years executed on each count, to be served concurrently.

## DISCUSSION AND DECISION

Barnes argues that the State presented insufficient evidence to support his conviction on two counts of Class A felony child molesting.

4

In reviewing the sufficiency of the evidence, we examine only "the probative evidence and reasonable inferences" that support the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility, nor do we reweigh the evidence to determine if it was sufficient to support a conviction. *Id.* Under our appellate system, those roles are reserved for the finder of fact. Instead, we consider only the evidence most favorable to the trial court ruling and "affirm the conviction unless 'no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.'" *Id.* at 146-47 (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). This evidence need not overcome every reasonable hypothesis of innocence; it is sufficient so long as "'an inference may reasonably be drawn from it to support the verdict.'" *Id.* at 147 (quoting *Pickens v. State*, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

*Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012).

Here, the State presented K.R.'s testimony that Barnes digitally penetrated her vagina on July 4, 2010, and that she and Barnes engaged in sexual intercourse on July 6, 2010. The State corroborated this testimony with evidence of the text message, "I just lost my virginity," Ex. p. 17, sent by K.R. to her best friend immediately after the alleged digital penetration. The State also provided evidence of the text messages, "[C]um nd give me sum," Ex. p. 224, and "Promise me that we r gonna have sex tonight," Ex. p. 225, sent by Barnes to K.R. shortly before the alleged sexual intercourse. Additionally, the State presented evidence of the text message, "[Y]uu said that yuu didn't think yuu popped [my cherry]!" Ex. p. 268, sent from K.R. to Barnes on the day after the alleged sexual intercourse. The State further corroborated K.R.'s testimony with that of Nurse Hopper, who stated that she found an abrasion on the side of K.R.'s vaginal opening that could have come from a penis or a finger.

We conclude that a reasonable jury could find Barnes guilty of two counts of Class A felony child molesting on this evidence. Barnes's claim that the State presented no

evidence, other than K.R.'s testimony, that Barnes engaged in deviate sexual conduct or sexual intercourse with K.R. is patently false. Moreover, it ignores the fact that "[a] victim's testimony, even if uncorroborated, is ordinarily sufficient to sustain a conviction for child molesting." *Bowles v. State*, 737 N.E.2d 1150, 1152 (Ind. 2000). Barnes's other contentions simply invite us to reweigh the evidence, which is something we will not do. *Drane*, 867 N.E.2d at 146.

The judgment of the trial court is affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.